United States District Court
Northern District of California

CHARLOTTE PENERMON,

      Plaintiff,

    v.

WELLS FARGO BANK, N.A.,

      Defendant.

Case No.: 14-cv-00065-KAW

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT WELLS FARGO BANK, N.A.'S MOTION TO DISMISS

(Dkt. No. 14)

On February 24, 2014, Defendant Wells Fargo Bank, N.A. filed a motion to dismiss Plaintiff Charlotte Penermon's first amended complaint alleging that Wells Fargo violated the California Homeowner Bill of Rights (hereafter "HBOR").

On April 17, 2014, the Court held a hearing, and after careful consideration of the parties arguments and the applicable legal authority, for the reasons set forth below, the Court GRANTS IN PART AND DENIES IN PART Wells Fargo's motion to dismiss.

## I.      BACKGROUND

On February 12, 2008, Plaintiff Charlotte Penermon refinanced her mortgage loan, secured by a deed of trust, with Wachovia Mortage, FSB ("Wachovia") for the Subject Property located at 4533 San Carlos Ave., Oakland, California. (Pl.'s First Am. Compl., "FAC," Dkt. No. 12 ¶ 8.) In 2009, Wachovia merged with Defendant Wells Fargo. *Id.*

Plaintiff asserts that in January 2013, due to deteriorating health conditions, she sent Wells Fargo an authorization to release information to her son, Enrico Penermon ("Enrico") so that he could communicate with Wells Fargo on her behalf. (FAC ¶ 9.)

In February 2013, Enrico allegedly contacted Wells Fargo to request a loan modification, and Plaintiff was assigned a single point of contact ("SPOC"), Britni Ridge, as her Wells Fargo Home Mortgage home preservation specialist. (FAC ¶¶ 10-11.) On March 14, 2013, Plaintiff

received a letter from Britni Ridge with a loan modification application, which stated that during the review period, Plaintiff's home would not be referred to foreclosure or sold at a foreclosure sale.  (FAC ¶ 12.)  The letter also provided that if Plaintiff did not qualify for a loan modification, Wells Fargo would work with Plaintiff to explore other options available.  *Id.*

In April 2013, Enrico sent in the loan modification application along with the required documents to Wells Fargo. (FAC ¶¶ 13, 39.)  Despite this submission, Wells Fargo never acknowledged receipt of the application, and Plaintiff never received a written determination regarding the loan modification application.  *Id.*  Plaintiff further alleges that after the submission of the loan modification application, Enrico attempted to contact SPOC Ridge numerous times, and left her several messages, to inquire about the status of the modification application.  (FAC ¶ 14.)  SPOC Ridge, however, never returned any of Enrico's calls.  *Id.* After not receiving any response from SPOC Ridge, Enrico called Wells Fargo and spoke with another Wells Fargo representative, at which time he was informed that SPOC Ridge was the assigned single point of contact and that she would get back to him with the result of the modification application.  (FAC ¶ 15.)

Plaintiff also alleges that in April 2013, Enrico called Wells Fargo to make a single payment, but the Wells Fargo representative refused to take the payment unless it was for the entire amount owed, which, according to the representative, was approximately $3,000.  (FAC ¶ 16.)

On May 20, 2013, a Notice of Default ("NOD") was recorded with the Alameda County Recorder's Office.  (Def.'s Req. for Judicial Notice, "RJN," Dkt. No. 15, Ex. H.)  According to the NOD, Plaintiff owed $9,441.65 as of May 16, 2013. *Id.*  Plaintiff, however, asserts that she made, and Defendant accepted, payments until February 2013.  (FAC ¶ 17.)  Plaintiff also believes that the amount listed on the NOD was incorrect, since the Wells Fargo representative informed Enrico that Plaintiff owed $3,000 in April and one month later, the NOD provided that she owed $9,441.65 when the mortgage payment was approximately $1,400 a month.  *Id.*

///

///

United States District Court
Northern District of California

On August 23, 2013, Plaintiff received a Notice of Trustee's Sale with a scheduled sale date of September 10, 2013.  (FAC ¶ 18.)  On September 30, 2013, a Trustee's Deed Upon Sale was recorded with the Alameda County Recorder's Office. (FAC ¶ 20; RJN, Ex. K.)

On December 4, 2013, Plaintiff filed this action in Alameda County Superior Court.  On January 6, 2014, Wells Fargo removed the case to federal court.   On January 13, 2014, Wells Fargo filed a motion to dismiss the initial complaint.

Instead of opposing Wells Fargo's initial motion to dismiss, Plaintiff filed a first amended complaint on February 3, 2014.  (FAC, Dkt. No. 12.)  Plaintiff's amended complaint alleges seven causes of action: (1) Violation of Cal. Civ. Code § 2924; (2) Violation of Cal. Civ. Code § 2924.17; (3) Violation of Cal. Civ. Code § 2923.6; (4) Violation of Cal. Civ. Code § 2923.7; (5) Violation of Cal. Civ. Code § 2924.10; (6) Negligence; and (7) Unfair Business Practices - Violation of Business and Professions Code § 17200 *et. seq*.  The second through fifth causes of action are for violations of the California Homeowner Bill of Rights (collectively referred to as the "HBOR claims"), which went into effect on January 1, 2013.

On February 24, 2014, Wells Fargo filed a motion to dismiss the first amended complaint asserting, among other arguments, that Plaintiff's HBOR claims are preempted by the Home Owners' Loan Act (hereafter "HOLA").  (Def.'s Mot. to Dismiss the First Am. Compl., "Def.'s Mot.," Dkt. No. 14.)  On March 12, 2014, Plaintiff filed her opposition. (Pl.'s Opp'n, Dkt. No. 19.)  On March 17, 2014, Wells Fargo filed its reply. (Def.'s Reply, Dkt. No. 22.)

On April 17, 2014, the Court held a hearing and asked the parties to file supplemental briefing on the remedies available for wrongful foreclosure in violation of Civil Code § 2924. Plaintiff filed her brief on April 24, 2014. (Pl.'s Suppl. Brief, Dkt. No. 28.)  Wells Fargo filed its supplemental brief in response of May 1, 2014. (Def.'s Suppl. Brief, Dkt. No. 29.)

## II.     LEGAL STANDARD

**A.     Motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted.  A motion to dismiss

United States District Court
Northern District of California

under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In considering such a motion, a court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation marks omitted).

A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"Threadbare recitals of the elements of a cause of action" and "conclusory statements" are inadequate. *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

Generally, if the court grants a motion to dismiss, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations omitted).

///

///

4

United States District Court
Northern District of California

**B.     Request for Judicial Notice**

As a general rule, a district court may not consider any material beyond the pleadings in ruling on a 12(b)(6) motion to dismiss for failure to state a claim. *Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir. 2001).  A district court may take notice of facts not subject to reasonable dispute that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b); *United States v. Bernal–Obeso,* 989 F.2d 331, 333 (9th Cir.1993).  "[A] court may take judicial notice of 'matters of public record,'" *Lee,* 250 F.3d at 689 (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading" without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment.  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).  The court need not accept as true allegations that contradict facts which may be judicially noticed.  *See Mullis v. United States Bankruptcy Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).

## III.     DISCUSSION

**A.     Request for Judicial Notice**

As a preliminary matter, Wells Fargo asks that the Court take judicial notice of a number of documents in support of its motion to dismiss.  (Req. for Judicial Not., "RJN," Dkt. No. 15.) The documents are purportedly true and correct copies of: A) Adjustable Rate Mortgage Note, dated February 12, 2008; B) a Deed of Trust recorded with the Alameda County Recorder's Office on February 21, 2008; C) a Certificate of Corporate Existence dated April 21, 2006 issued by the Office of Thrift Supervision certifying that World Savings Bank, FSB, is a federal savings bank; D) a letter dated November 19, 2007 issued by the Office of Thrift Supervision authorizing a name change from World Savings Bank, FSB to Wachovia Mortgage, FSB; E) the Charter of Wachovia Mortgage, FSB; F) Official Certification of the Comptroller of the Currency stating that effective November 1, 2009, Wachovia Mortgage, FSB converted to Wells Fargo Bank Southwest, N.A., which then merged with and into Wells Fargo Bank, N.A.; G) Printout form the

website of the Federal Deposit Insurance Corporation, dated September 2, 2010, showing the history of Wachovia Mortgage, FSB; H) Notice of Default and Election to Sell Under Deed of Trust, dated May 16, 2013, and recorded with the Alameda County Recorder on May 20, 2013; I) Substitution of Trustee, dated May 1, 2013, and recorded with the Alameda County Recorder on May 16, 2013; J) Notice of Trustee's Sale Trust, dated August 21, 2013, and recorded with the Alameda County Recorder on August 23, 2013; K) Trustee Deed upon Sale dated September 24, 2013, and recorded with the Alameda County Recorder on September 30, 2013; L) Office of Thrift Supervision Opinion Letter, dated July 22, 2013, No. P-2003-5; M) Office of the Comptroller of Currency, OCC Bulletin 2011-47, dated December 8, 2011; N) Office of the Comptroller of Currency, OCC Bulletin 2012-2, dated January 6, 2012; O) Office of the Comptroller of Currency, OCC Bulletin 2013-32, dated November 20, 2013; P) Federal Home Loan Bank Board, General Counsel Letter, dated August 13, 1985; and Q) National Mortgage Settlement (NMS) Consent Judgment in *United States v. Bank of America Corp., et al.,* Case No. 1:12-cv-00361-RMC (ND Cal. April 4, 2012).

Plaintiff did not file an opposition to Defendant's request for judicial notice, and so Plaintiff is not deemed to dispute the authenticity of any of the exhibits.  Exhibit A is a copy of the Adjustable Rate Mortgage Note that is referred to in the first amended complaint. Since Plaintiff has not questioned the authenticity of this copy, the Court will take judicial notice of it.

Exhibits B and H through K are true and correct copies of official public records, whose authenticity is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201(b).

As for Exhibits C through G and L through P, Defendant argues that they are appropriate for judicial notice because they reflect the official acts of executive branch of the United States government. The California Evidence Code provides that judicial notice is proper for documents that reflect the acts of executive agencies of the United States government. *See* California Evidence Code§ 452 (c) (judicial notice may be taken of official acts of the legislative, executive or judicial departments). As Plaintiff has not objected to the authenticity of these exhibits, the Court will take judicial notice of them.

United States District Court
Northern District of California

As to Exhibit Q, the Court will take judicial notice of the National Mortgage Settlement (NMS) Consent Judgment, as judicial notice may be taken of court records.  *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980).

Accordingly, the Court GRANTS Wells Fargo's request for judicial notice.

**B.      Whether the Home Owners' Loan Act (HOLA) preempts Homeowner Bill of Rights (HBOR) claims.**

Wells Fargo argues that the HOLA, 12 U.S.C. § 1461 *et. seq.*, preempts all of Plaintiff's HBOR claims for three reasons: (1) HOLA preemption attaches to and survives the transfer of a federal savings bank (FSB)-originated loan, (2) Plaintiff agreed to the loan terms stating that the loan would be governed by HOLA, whether it was held by the originating FSB or another entity, and (3) since Plaintiff's state law HBOR claims are related to the "processing" or "servicing" of her mortgage, the claims are preempted by HOLA. (Def.'s Mot. at 2-9.)

In opposition, Plaintiff argues that Wells Fargo, a national bank, was the one that engaged in the wrongful conduct, and thus, HOLA is not implicated and does not preempt Plaintiff's HBOR claims.  (Pl.'s Opp'n at 3-5.)

These arguments necessitate a discussion on the legislative history of HOLA, why it was enacted, and whether HOLA preemption is applicable to Wells Fargo under the circumstances of this case.

1.      <u>History of HOLA</u>

Congress enacted HOLA to regulate savings associations or banks "at a time when record numbers of homes were in default and a staggering number of state-chartered savings associations were insolvent." *Silvas v. E\* Trade Mortg. Corp.*, 514 F.3d 1001, 1004 (9th Cir. 2008).  Regulators believed that HOLA would provide a uniform set of regulations and ensure the stability of federal thrifts "by efficiently delivering low-cost credit to the public free from undue regulatory duplication and burden." 12 C.F.R. § 560.2(a).  HOLA specifies that one of its primary regulatory goals is to encourage thrifts to provide credit for housing and other goods and services in a safe and sound manner. 12 U.S.C.A. § 1464(a)(2).  It imposes rules on federal savings associations and banks "according to nationwide best practices." *Rijhwani v. Wells*

7

*Fargo Home Mortgage, Inc.*, C 13-05881 LB, 2014 WL 890016, at *14 (N.D. Cal. Mar. 3, 2014). Congress created the Office of Thrift Supervision (OTS) to administer HOLA and oversee the federal savings associations. 12 C.F.R. § 560.2(a). Congress provided OTS with plenary power to preempt state laws affecting the operations of federal savings associations when deemed appropriate to serve various ends, including "to facilitate the safe and sound operation of federal savings associations, to enable federal savings associations to conduct their operations in accordance with the best practices of thrift institutions in the United States, or to further other purposes of HOLA." 12 C.F.R. § 560.2(a). Through its regulations, OTS made clear that

> ***OTS hereby occupies the entire field of lending regulation for federal savings associations.*** OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities . . .

*Silvas*, 514 F.3d at 1005 (quoting 12 C.F.R. § 560.2(a)) (emphasis in original). Section 560.2(b) lists the types of laws that are preempted, including "state laws purporting to impose requirements" with respect to "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages." 12 C.F.R. § 560.2(b)(10). State laws, however, are not preempted "to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section." *Id.* § 560.2(c). For example, state contract, property and tort laws are not preempted if they meet the above requirements. *Id.* Preemption also does not apply to any other law that OTS reviews and finds "[f]urthers a vital state interest" and "[e]ither has only an incidental effect on lending operations or is not otherwise contrary to the purposes expressed in paragraph (a)" of § 560.2.

The Ninth Circuit has held that in order to analyze whether state law is preempted by HOLA:

> . . . the first step [is] to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects

United States District Court
Northern District of California

lending.  If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted.  This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c).  For these purposes, paragraph (c) is intended to be interpreted narrowly.  Any doubt should be resolved in favor of preemption.

*Silvas v. E\*Trade Mortg. Corp.*, 514 F.3d 1001, 1005 (9th Cir. 2008).  Here, the threshold question is whether the HOLA preemption analysis is applicable to Wells Fargo, since Wells Fargo is not a federal savings association.  The Ninth Circuit has not yet addressed this issue and there is a recognized split among the district courts in this circuit, which adopt one of two views.  The majority have held that "the status of the originator of the loan determines the applicability of HOLA to a particular loan." *Rijhwani*, 2014 WL 890016, at \*6; *see also Marquez v. Wells Fargo Bank, N.A.,* No. C 13–2819 PJH, 2013 WL 5141689, at \*4 (N.D.Cal. Sept. 13, 2013).  Wells Fargo relies on *Marquez v. Wells Fargo Bank, N.A.*, C 13-2819 PJH, 2013 WL 5141689 (N.D. Cal. Sept. 13, 2013), which found that several statutes in California's non-judicial foreclosure scheme were "preempted by HOLA, as it imposes requirements on 'processing' or 'servicing' of mortgages, or on the 'terms of credit,' and also seeks to impose an obligation that affects lending."  (Def. Mot. at 7-8; *see, e.g., Gabali v. OneWest Bank, FSB,* 2013 U.S. Dist. LEXIS 47193, 2013 WL 1320770 at \*10 (N.D. Cal. March 29, 2013).)  *Marquez*, however, determined that these claims were preempted without a full analysis of HOLA, undoubtedly due, in part, to Plaintiff's opposition, which, while advocating against HOLA preemption, was stricken as untimely filed. *Marquez*, 2013 WL 5141689, at \*3; *see* Plaintiff's Response to Defendant's Motion to Dismiss, *Marquez v. Wells Fargo, N.A.,* Case No. C 13-2819 PJH (N.D. Cal. July 30, 2013), ECF No. 28.

A minority of courts, however, have recently "questioned the logic of allowing a successor party such as Wells Fargo to assert HOLA preemption, especially when the wrongful conduct alleged was done after the federal savings association or bank ceased to exist." *Rijhwani*, 2014 WL 890016, at \*7; *see also Gerber v. Wells Fargo Bank, N.A.*, CV 11-01083-PHX-NVW, 2012 WL 413997, at \*4 (D. Ariz. Feb. 9, 2012) (holding that HOLA preemption does not apply to Wells Fargo because it is not a federal savings association); *Leghorn v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 1093, 1108 (N.D. Cal. 2013); *Rhue v. Wells Fargo Home*

United States District Court
Northern District of California

*Mortgage, Inc.,* 2012 WL 8303189, at *3 (C.D. Cal. Nov. 27, 2012) (holding that World Savings Bank's conduct before its merger with Wells Fargo would be governed by HOLA where appropriate, while Wells Fargo's own conduct after that date would not); *Rodriguez v. U.S. Bank Nat. Ass'n*, 2012 WL 1996929, at *7 (N.D. Cal. June 4, 2012) (holding that whether HOLA governs the action depends on when the alleged conduct occurred); *Ramirez v. Wells Fargo Bank, N.A.,* 2011 WL 1585075, at *7 (N.D. Cal., Apr.27, 2011) (declining to find HOLA preemption of claims arising out of post-merger conduct).  Many of these courts "have applied HOLA preemption only to conduct occurring before the loan changed hands from the federal savings bank to the entity not governed by HOLA."  *Rijhwani*, 2014 WL 890016 at *7 (citations omitted).   Essentially, since "preemption is not some sort of asset that can be bargained, sold, or transferred," *Gerber*, 2012 WL 413997, at *4, courts look to the "nature of the alleged claims that are the subject of the suit . . . [World Savings Bank's] conduct before its merger with Wells Fargo on November 1, 2009 would be governed by HOLA where appropriate, while Wells Fargo's own conduct after that date would not." *Rijhwani*, 2014 WL 890016 at *7 (quoting *Rhue*, 2012 WL 8303189, at * 3).

    2.    Rise of Loan Modifications

        On December 1, 2008, the National Bureau of Economic Research announced that in December 2007, the economy had entered into the worst recession since the Great Depression.[1] The economic downturn was caused in part by a mortgage crisis. *See* Arsen Sarapinian, *Fighting Foreclosure: Using Contract Law to Enforce the Home Affordable Modification Program (HAMP)*, 64 HASTINGS L.J. 905 (2013).  The effects were even more swift and dire in states with non-judicial foreclosure statutes. *Id.* at 912. Borrowers in all states were unable to obtain foreclosure relief through the court system.  *Id.*  As a result, "subprime lending, increased homeownership, and economic instability led to an unprecedented home foreclosure crisis, causing millions of Americans to lose their homes." *Id.*  In response to this crisis, loan modifications became a matter of national policy, and the federal government enacted various

---

[1] NAT'L BUREAU OF ECON. RESEARCH, *Determination of the December 2007 Peak in Economic Activity*, http://www.nber.org/cycles/dec2008.html (2008).

United States District Court
Northern District of California

programs designed to assist borrowers in avoiding foreclosure.  *Id.* at 912-13.  One such program

was the Home Affordable Modification Program (HAMP) which resulted in more than one

million homeowners receiving a permanent modification by mid-2012.  *See* U.S. DEP'T OF THE

TREASURY, MAKING HOME AFFORDABLE PROGRAM PERFORMANCE REPORT THROUGH MAY 2012

(2012), *available at* http://www.treasury.gov/initiatives/financial-stability/results/mha-

reports/pages/default.aspx.

        3.      <u>Enactment of the Homeowner Bill of Rights</u>

      In response to the mortgage and foreclosure crisis, the California Legislature enacted the

Homeowner Bill of Rights (HBOR) on January 1, 2013, shortly after the finalization of the

National Mortgage Settlement (NMS).[2]  This law was created to combat the foreclosure crisis

and hold banks accountable for exacerbating it.[3]  HBOR's purpose is to ensure that homeowners

"who may qualify for a foreclosure alternative are considered for, and have a meaningful

opportunity to obtain, available loss mitigation options," such as loan modifications or other

alternatives to foreclosure.  *See* A.B. 278 § 1(b); *Rijhwani*, 2014 WL 890016, at *8.  Most

importantly, HBOR provides borrowers with a private right of action for certain material

violations of HBOR, including California Civil Code §§ 2923.6 (dual-tracking), 2923.7 (single

---

[2] Under the NMS, five of the country's largest mortgage servicers, including Wells Fargo, agreed to provide $20 billion worth of mortgage-related relief to homeowners and to abide by new servicing standards meant to address some of the worst foreclosure abuses.  *See United States v. Bank of Am.*, No. 1:12-cv-00361-RMC (D.D.C. Apr. 4, 2012).  Under the NMS, however, only state attorneys general can sue noncompliant banks. To address this issue, the California Legislature passed HBOR to give borrowers a private right of action and to apply these requirements to all servicers, not just the five NMS signatories who were already subject to similar standards.  *See also* California Homeowner Bill of Rights Takes Key Step to Passage, State of Cal. Dep't of Justice, Office of the Attorney Gen. (June 27, 2012), http://oag.ca.gov/news/press-releases/california-homeowner-bill-rights-takes-key-step-passage ("The goal of the [HBOR] is to take many of the mortgage reforms extracted from banks in a [N]ational [M]ortgage [S]ettlement and write them into California law so they could apply to all mortgage-holders in the state.").

[3] *See* CALIFORNIA HOMEOWNER BILL OF RIGHTS COLLABORATIVE, *Litigating Under the California Homeowner Bill of Rights* (2014), http://calhbor.org/2014/01/07/updated-practice-guide-litigating-under-the-homeowner-bill-of-rights-2/; *see also A.B. 278 Bill Analysis*, *available at* http://www.leginfo.ca.gov/pub/11-12/bill/asm/ab_0251-0300/ab_278_cfa_20120702_105700_asm_floor.html (last visited April 16, 2014).

11

United States District Court
Northern District of California

1   point of contact), 2924.10 (acknowledgment of receipt), and 2924.17 (verification of

2   documents).  *See* Cal. Civ. Code §§ 2924.12(a)(1),(b).

3        HBOR, however, is limited in that it only applies to foreclosures of first liens on

4   owner-occupied, one-to-four unit properties.  Cal. Civ. Code § 2924.15(a).  Further, it only

5   provides procedural protections to foster alternatives to foreclosure; it does not entitle a

6   borrower to a loan modification.  Cal. Civ. Code § 2923.4(a).  Lastly, as long as the

7   National Mortgage Settlement is effective, a signatory who complies with the terms of the

8   NMS with respect to the individual borrower is not liable under HBOR.[4]  Cal. Civ. Code §

9   2924.12(g).

10       4.    Whether Plaintiff's HBOR claims are preempted by HOLA.

11       Wells Fargo contends that HOLA preempts all of Plaintiff's HBOR claims on the

12   grounds that HOLA preemption attaches to, and survives the transfer of, a federal savings bank

13   (FSB)-originated loan, that Plaintiff agreed to the loan terms stating that the loan would be

14   governed by HOLA, whether it was held by the originating FSB or someone else, and that since

15   Plaintiff's state law HBOR claims are related to the "processing" or "servicing" of her mortgage,

16   the claims are preempted by HOLA. (Def.'s Mot. at 2-9.)

17       To support its contention that a HOLA preemption defense transferred to Wells Fargo

18   through the merger, Wells Fargo cites a 2003 opinion letter from the Office of Thrift Supervision

19   (OTS) that provides that a New Jersey state law creating a multifaceted compliance scheme is

20   partially preempted by HOLA when applied to federal savings associations. (RJN, Ex. L at 1;

21   Def.'s Mot. at 4.)  The legal opinion letter was issued at the request of a federal savings

22   association to address to how the state law applied to federal savings associations.  It does not

23   address whether HOLA preemption applies to the actions of national banks that acquire federal

24   savings loans.  In fact, the letter states that the FSA enjoys HOLA preemption because

25   "Congress gave OTS, not the States, the task of determining the best practices for federal

26   savings associations and creating uniform rules. OTS conducts regular examinations of thrift

---

27   [4] HBOR contains similar provisions to those in the NMS, including the prohibition of dual

28   tracking and the SPOC requirement, both of which Wells Fargo allegedly violated in this action, and so it would unable to avail itself of the safe harbor provision.

United States District Court
Northern District of California

1  lending operations for safety and soundness and compliance with established consumer

2  protections." (RJN, Ex. L at 5.)  First, Wells Fargo is not regulated by OTS.  Second, Wells

3  Fargo offers no compelling argument that the underlying facts relied upon in the letter bear any

4  resemblance to the facts of this case or that the opinion letter should be afforded any deference

5  here.  Moreover, HOLA is strictly limited to federal savings institutions and is not intended to

6  affect the operations of national banks, such as Wells Fargo. *See Gerber*, 2012 WL 413997, at

7  *4 (national banks do not enjoy HOLA preemption for their own actions by acquiring a federal

8  savings loan); 12 C.F.R. § 560.2 (OTS only regulates federal savings associations).  Thus, while

9  Wells Fargo may invoke HOLA preemption if the alleged wrongdoing arises out of Wachovia's

10  pre-merger conduct, where Wells Fargo's own conduct is the subject of litigation, HOLA does

11  not necessarily apply.

12       Wells Fargo further contends that it is shielded by HOLA on the grounds that Plaintiff

13  agreed to the loan terms providing that the loan would be governed by HOLA, whether it was

14  held by the originating FSB or someone else.  (Def.'s Mot. at 5-6.)  In support of this argument,

15  Wells Fargo cites to *Mata v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 108197, at *11-12

16  (C.D. Cal. July 31, 2013), where the court held that "the fact that World Savings Bank merged in

17  Wachovia and later merged into Wells Fargo does not render HOLA inapplicable."  (*Id.* at 6; *see*

18  *also* Def.'s Reply at 2.)  The cases cited are largely unanchored by statutory analysis or legal

19  reasoning, and generally provide legal conclusions without analyzing their holdings by citing

20  either "(a) nothing, (b) each other, or (c) generic statements of law about corporations

21  succeeding to the rights of the entities they acquire." *Gerber*, 2012 WL 413997, at *4.  In

22  essence, the cases Defendant cites shield national banks such as Wells Fargo, even though they

23  are not federal savings banks, by simply concluding that an automatic HOLA preemption applies

24  to loans originated by a federal savings bank.  This Court has similarly found that HOLA

25  preempted causes of action for wrongful foreclosure when the conduct complained of occurred

26  at the time of origination. *See, e.g., McDonald v. Wells Fargo Bank, N.A.*, CV 13-02334-KAW,

27  2013 WL 6512881, at *6 (N.D. Cal. Dec. 12, 2013) (pre-HBOR case finding HOLA preemption

28  for allegedly fraudulent conduct at the time of loan origination).  It is true that many courts in

this district, including this one, have determined that "the status of the originator of the loan determines the applicability of HOLA to a particular loan." *See Rijhwani,* 2014 WL 890016, at *6.  In the majority of those cases, however, "the plaintiffs either failed to argue otherwise or conceded the issue, the upshot being that the courts never had to grapple with it; instead, the courts simply concluded, without much analysis, that HOLA preemption applied." *Id.* (citing *Pratap v. Wells Fargo Bank, N.A.*, C 12-06378 MEJ, 2013 WL 5487474, at *3-5 (N.D. Cal. Oct. 1, 2013); *Graybill v. Wells Fargo Bank, N.A.,* 953 F. Supp. 2d 1091, 1109 (N.D. Cal. 2013); *Preciado v. Wells Fargo Home Mortgage,* No. 13–00382 LB, 2013 WL 1899929, at *3–4 (N.D. Cal. May 7, 2013); *Plastino v. Wells Fargo Bank,* 873 F.Supp.2d 1179, 1184 n.3 (N.D. Cal. 2012); *Appling v. Wachovia Mortg., FSB,* 745 F.Supp.2d 961, 971 (N.D. Cal. 2010); *DeLeon,* 729 F. Supp. 2d 1119, 1126 (N.D. Cal. 2010).)  Indeed, this action marks the first time that this court has been afforded the opportunity to address HOLA preemption in light of the recently enacted HBOR statute, when the complained of conduct was committed by Wells Fargo rather than by a federal savings bank.

Since the Ninth Circuit has not decided this issue, the previous holdings do not mean that Wells Fargo is automatically and permanently imbued with a preemption defense so long as the loan originated with a federal savings bank.  If Wells Fargo's position that HOLA preemption shields its own post-acquisition conduct were adopted, Wells Fargo would have license to violate the terms of the NMS, of which it was a signatory, with impunity and to oust borrowers from their homes without any private recourse, so long as their loans originated with a federal savings bank.  To find that some homeowners cannot avail themselves of HBOR protection based solely on their original lender, and without regard to the entity engaging in the otherwise illegal conduct, is arbitrary at best, and, at worst, could result in a gross miscarriage of justice, while also running afoul of one of the original purposes of HOLA enactment: consumer protection.

HOLA concerns laws "affecting the operations . . . of federal savings associations, with an aim to . . . facilitate the safe and sound operation" of those associations.  12 C.F.R. § 560.2(a). As discussed above, the reason for HOLA's enactment was to encourage lending and to ensure

14

United States District Court
Northern District of California

1  stability in federal savings loans.  *See* discussion *supra* Part III.B.1.  HOLA was not enacted to

2  provide a defense to actions that would otherwise violate consumer protection laws.  Moreover,

3  it is unlikely that HOLA contemplated the subsequent mortgage crisis and the resulting mergers

4  of federal savings banks into national banks or loan servicing as it exists today.

5      Accordingly, the Court adopts the minority view of HOLA preemption and finds that the

6  court must consider "whether the alleged violations took place when the banking entity was

7  covered by HOLA."  *Valtierra*, 2011 WL 590596 at *4; *see also Rijhwani,* 2014 WL 890016, at

8  *7.  Put simply, HOLA preemption applies where the allegations concern actions taken by a

9  federal savings association or bank, even if that federal savings association is later acquired by a

10  national bank.[5]  So, while Wells Fargo does inherit the liabilities and possible defenses that

11  Wachovia could raise about its own conduct, Wells Fargo itself cannot violate state laws when

12  servicing loans that were originated by an entity regulated by HOLA.  *See In re Toliver*, 464

13  B.R. 720, 739 (Bankr. E.D. Ky. 2012) (holding that "the Defendants should not be allowed to

14  hide behind a defense created solely for the [savings association], a non-party, in order to defeat

15  allegations made against the Defendants that are unrelated to any acts of that non-party.")

16      Wells Fargo also argues that Plaintiff's state law claims relate to the "processing" or

17  "servicing" of Plaintiff's loan and request for a loan modification, and thus, are preempted by

18  HOLA.  (Def.'s Mot. at 7.)  Defendant bases this on § 560.2(b), which defines the scope of

19  HOLA, and provides the types of laws that are preempted, including state laws purporting to

20  impose requirements on federal savings banks regarding: "Processing, origination, servicing,

21  sale or purchase of, or investment or participation in mortgages."  12 C.F.R. § 560.2(b)(10).  As

22  discussed above, Plaintiff's claims concern Wells Fargo's conduct that occurred after it acquired

23

24  _____

[5] This would not change the outcome of those cases where the alleged conduct occurred at the

25  time of origination or prior to the merger of the federal savings bank with a national bank. To the

26  extent that this court has found HOLA preemption applied to conduct committed by Wells Fargo

    after the acquisition of a federal savings loan, plaintiffs either did not address HOLA

27  preemption, conceded that HOLA preemption applied to Wells Fargo's conduct, or only

    advocated that HOLA did not preempt certain claims (i.e. fraud). None of those few cases asked

28  the court to rule on whether Wells Fargo could avail itself of HOLA preemption for its post-

    acquisition conduct.

1  Wachovia.  Accordingly, even if Plaintiff's state law claims do relate to the "processing" or

2  "servicing" of Plaintiff's loan, Wells Fargo cannot assert HOLA preemption.

3        For the reasons set forth above, causes of action based on conduct by a national bank

4  after acquisition of a federal savings loan do not implicate HOLA.  *Rijhwani,* 2014 WL 890016,

5  at *7.  Since all of the alleged wrongful conduct in this matter occurred long after Wachovia

6  merged into Wells Fargo, and was allegedly committed by Wells Fargo personnel, Wells Fargo

7  may not assert HOLA preemption.  *See id.* [6]

8  **C.    Motion to Dismiss**

9        Since Wells Fargo is not deemed to enjoy the benefit of HOLA preemption on the

10 grounds that it acquired a loan originated by a federal savings bank, the Court will address Wells

11 Fargo's remaining arguments.[7]

12       1.    California Civil Code § 2924

13       Plaintiff's first cause of action is for wrongful foreclosure in violation of California Civil

14 Code § 2924.  Section 2924(a)(l)(C) requires that the beneficiary of the deed of trust include a

15 statement in the notice of default that describes "the nature of each breach actually known to the

16 beneficiary and of his or her election to sell or cause to be sold the property to satisfy that

17 obligation and any other obligation secured by the deed of trust or mortgage that is in default."

18       Here, Plaintiff alleges that Defendant's NOD violated § 2924(a)(1)(C) because it

19 inaccurately stated that Plaintiff was in default on the loan as of December 1, 2012.  (FAC ¶ 24.)

20 Plaintiff, however, alleges that she made, and Defendant accepted, payments until February

21 2013.  *Id.*  In addition, Plaintiff alleges that when she called Wells Fargo to make a payment in

22 April 2013, a representative informed Plaintiff that she owed approximately $3,000.  (*Id.* ¶ 25.)

23 One month later, Defendant's NOD provided that the amount in arrears was $9,441.65.  (*Id.*)  As

24 such, Plaintiff alleges that the statement is inaccurate and improperly inflated with late fees and

25 attorneys' fees.  (FAC ¶ 25.)

26 ───────────────
   [6] Wells Fargo does not address other types of preemption, so the Court need not consider the
27 conflict preemption that applies to national banks.
   [7] Additionally, Wells Fargo argues that Plaintiff has not alleged sufficient facts to establish that
28 any violation of HBOR was "material." (Def.'s Mot. at 18.) Whether an alleged violation was
   "material" is a question of fact and is inappropriate for disposition at this juncture.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    In response, Defendant seeks to dismiss Plaintiff's § 2924 cause of action on various

2    grounds, including lack of tender and failure to allege that she suffered prejudice from the

3    deficiencies in the NOD. (*See* Def.'s Mot. at 12-13.).

4    The Court was unclear whether there was any relief available for violations of § 2924, so

5    the Court ordered the parties to submit supplemental briefing regarding what statutory remedy, if

6    any, would be available to Plaintiff should she prevail on this claim.  In her supplemental brief,

7    Plaintiff relies on *Ragland v. U.S. Bank, N.A.,* 209 Cal. App. 4th 182 (2012), in support of her

8    position that there is an implied private right of action. (Pl.'s Suppl. Brief at 4.)  *Ragland,*

9    however, addressed whether there was an implied private right of action under § 2924g(d),

10   which dictates how a foreclosure sale must be conducted, including notice requirements.  Here, §

11   2924 simply states the requirement for initiating a non-judicial foreclosure.  Violations of these

12   requirements, as well as the statutory damages, are separately addressed in other sections of the

13   Civil Code.  Plaintiff, in fact, concurrently alleges claims for some of these violations. *See, e.g.,*

14   Cal. Civ. Code § 2924.17 (failure to verify documents), § 2923.6 (dual tracking), § 2924.10

15   (failure to acknowledge receipt of loan modification application).

16   Plaintiff also cites *Nissim v. Wells Fargo Bank, N.A.,* in support of her tenuous

17   proposition that monetary damages are available for every violation of § 2924. C 12-1201 CW,

18   2013 WL 192903, at *10 (N.D. Cal. Jan. 17, 2013).[8] This reliance is misplaced, as the *Nissim*

19   court granted leave to amend to plead specific facts, as well as "to identify the particular

20   subsection of section 2924 that he alleges Defendants have violated and, if a trustee's sale has

21   taken place, to plead tender adequately." *Id.*  Presumably this would also require Plaintiff to

22   identify the appropriate relief.

23   Accordingly, the Court dismisses Plaintiff's § 2924 claim with leave to amend to identify

24   the applicable statutory authority for recovery, as the Court does not believe that it is authorized

25   to provide monetary damages for a violation of § 2924 as it was excluded from § 2924.12, which

26

27

28   _____

[8] Plaintiff failed to provide a citation for this case, so the Court assumes that this is the proper citation.

United States District Court
Northern District of California

1   explicitly provides for statutory damages for various violations of HBOR and, therefore, the

2   non-judicial foreclosure scheme.

3       2.   <u>California Civil Code § 2924.17</u>

4       Plaintiff's second cause of action is titled "Violation of California Civil Code § 2924.17."

5   Section 2924.17 provides that before recording or filing a notice of default (NOD), a notice of

6   sale (NOS), as well as other specified documents, "a mortgage servicer shall ensure that it has

7   reviewed competent and reliable evidence to substantiate the borrower's default and the right to

8   foreclose, including the borrower's loan status and loan information." Cal. Civ. Code §

9   2924.17(b).

10      Plaintiff alleges that Defendant violated § 2924.17(b) by recording a NOD that was

11  inaccurate without having reveiewed competent and reliable evidence to substantiate Plaintiff's

12  default.  (FAC ¶ 30.)  Plaintiff asserts the NOD stated that payment had not been made for

13  installment of principal and interest which became due on December 1, 2012 and all subsequent

14  installments.  *Id.*  Plaintiff, however, alleges that she made, and Defendant accepted, payments

15  until February 2013. *Id.*  Plaintiff again provides that a Wells Fargo representative stated that she

16  owed approximately $3,000 in April and just a month later, the NOD stated that she owed

17  $9,441.65.  *Id.*  Based on the inaccuracy of Defendant's evidence, Plaintiff alleges that

18  Defendant unlawfully sold her property.  *Id.*

19      In response, Defendant asserts that Plaintiff fails to allege sufficient facts supporting her

20  § 2924.17 claim because Plaintiff's allegations are "conclusory allegations and assumptions."

21  (Def.'s Mot. at 16.)  Defendant also provides that the payments Plaintiff made up through

22  February 2013 had been applied towards her December 2012 mortgage payment and thus, the

23  information provided in the NOD is not incorrect.  (Def.'s Mot. at 13-14.)

24      Since the Court takes Plaintiff's allegations as true, the Court finds that the substantial

25  increase in the amount of Plaintiff's purported arrears in the NOD could be explained by

26  Defendant's failure to verify the amount with competent and reliable evidence.  Defendant

27  contends that the payments it accepted from Plaintiff until February 2013 were applied towards

28  Plaintiff's December 2012 mortgage payment, the $6,411.65 difference between the amount

18

United States District Court
Northern District of California

owed in April 2013 to May 2013.  This, however, is a question of fact rather than law, and would be more appropriately addressed on summary judgment.  Accordingly, Plaintiff alleges sufficient facts to support her allegation that Defendant did not review competent and reliable evidence regarding her loan prior to recording the NOD.

Thus, Defendant's motion to dismiss Plaintiff's § 2924.17 cause of action is denied.

3.   <u>California Civil Code § 2923.6</u>

Plaintiff's third cause of action is titled "Violation of California Civil Code § 2923.6," which prohibits dual tracking.  Section 2923.6(c) provides:

> **If a borrower submits a complete application for a first lien loan modification offered by**, or through, **the borrower's mortgage servicer**, a **mortgage servicer,** mortgagee, trustee, beneficiary, or authorized agent **shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending . . .** until . . . the mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period . . . has expired.

(Emphasis added.)  The statute further provides that "the borrower shall have at least 30 days from the date of the written denial to appeal the denial and to provide evidence that the mortgage servicer's determination was in error."  Cal. Civ. Code § 2923.6(d).

Plaintiff alleges that Defendant breached this statute by recording the NOD, NOS, and conducting a trustee's sale while Plaintiff's first lien loan modification application was pending. (FAC ¶ 38.)  Prior to the filing of the NOD, Enrico contacted Defendant on behalf of Plaintiff in February 2013 to request a loan modification, and on March 14, 2013, Plaintiff received a letter from Wells Fargo through its representative Britni Ridge, with a loan modification application and a list of required documents.  (FAC ¶ 39.)  Plaintiff alleges that she sent out the loan modification application with the required documents to Wells Fargo in April 2013.  (FAC ¶ 40.) Nonetheless, Defendant recorded a NOD on May 20, 2013.  (FAC ¶ 40.)  In June 2013, Enrico called Wells Fargo and was transferred to a Wells Fargo representative who informed him that it was not illegal to foreclose on the property while a loan modification application was pending. (FAC ¶ 41.)  Although Plaintiff had not received a written decision on the loan modification application, Defendant recorded a Notice of Trustee's Sale on August 23, 2013 and on

September 16, 2013, the Property was sold.  (FAC ¶ 42.)  Plaintiff further alleges she was never informed of the result of her modification application, and thus, Defendant failed to offer an opportunity to appeal the decision, thereby "eviscerating Plaintiff's statutory right to appeal pursuant to the Civil Code."  (FAC ¶ 43.)

In its motion to dismiss, Defendant contends that Plaintiff cannot prevail on a claim under § 2923.6 because it is preempted by HOLA, and Plaintiff fails to allege that she complied with the statute.  (Def.'s Mot. at 16.)  As provided above, HOLA does not preempt this cause of action, because the conduct at issue is attributed to Wells Fargo rather than Wachovia.

Defendant further contends that compliance with § 2923.6 is conditioned upon the borrower having submitted a complete application as defined in § 2923.6 (h). (Def.'s Mot. at 17.)  The Court finds that Plaintiff pleads facts to support the inference that she submitted a complete loan modification application, but fails to clearly plead that the application as submitted was complete as required by statute. (*See* FAC ¶ 40; Pl.'s Opp'n at 19.)  The Court notes that according to the allegations in the complaint, Wells Fargo never responded to Plaintiff's application at all, and, thus, did not notify Plaintiff that the application was incomplete or that the application was not otherwise considered by Wells Fargo for modification.  Plaintiff must, nevertheless, amend to clearly plead that the application that was submitted was a complete application, as required by § 2923.6(h).

Accordingly, the Court grants Wells Fargo's motion to dismiss Plaintiff's § 2923.6 cause of action with leave to amend to plead that the application was complete.

4.  California Civil Code § 2923.7

Plaintiff's fourth cause of action is titled "Violation of California Civil Code § 2923.7," which requires the lender to assign a Single Point of Contact (SPOC).  Section 2923.7(a) provides that when a borrower requests a foreclosure prevention alternative, "the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact."  The SPOC shall be responsible for:

United States District Court
Northern District of California

(1) Communicating the process by which a borrower may apply for an available foreclosure prevention alternative and the deadline for any required submissions to be considered for these options.

(2) Coordinating receipt of all documents associated with available foreclosure prevention alternatives and notifying the borrower of any missing documents necessary to complete the application.

(3) Having access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative.

(4) Ensuring that a borrower is considered for all foreclosure prevention alternatives offered by, or through, the mortgage servicer, if any.

(5) Having access to individuals with the ability and authority to stop foreclosure proceedings when necessary.

Cal. Civ. Code § 2927(b).  Plaintiff alleges that Wells Fargo assigned a SPOC after Enrico requested a loan modification in February 2013, who sent Plaintiff a loan modification application along with a letter that stated that during the review period, Plaintiff's home would not be referred to foreclosure or sold at a foreclosure sale.  (FAC ¶¶ 10-12.)  In addition, the letter also stated that if Plaintiff did not qualify for a loan modification, Defendant would work with Plaintiff to explore other options available to help keep the home.  *Id.*  Plaintiff alleges, however, that the assigned SPOC failed to communicate and timely inform Plaintiff of the current status of her loan modification.  (FAC ¶ 49.)  After Enrico submitted the loan modification application, Enrico called the SPOC numerous times to inquire as to the status of Plaintiff's application, but Ms. Ridge failed to return any of his calls. *Id.*

In response, Defendant alleges that HBOR is not applicable to plaintiff's claims for a violation of § 2923.7, because the statute is preempted by HOLA.  (Def.'s Mot. at 17.)  Again, the Court adopts the position that Wells Fargo cannot assert HOLA preemption for actions taken by Wells Fargo employees simply by virtue of the loan having originated with a federal savings bank.

Defendant further alleges that lenders and loan servicers are not required to volunteer a SPOC to every borrower, but rather, borrowers must affirmatively request a SPOC.  (Def.'s Mot. at 17.)  To the contrary, the statute states that "[u]pon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point

United States District Court
Northern District of California

of contact...." Cal. Civ. Code § 2923.7.  A plain reading of the statute requires Wells Fargo to assign a SPOC when a borrower requests a foreclosure prevention alternative.  It does not require a borrower to specifically request a SPOC.  Plaintiff sufficiently alleges that Enrico contacted Wells Fargo to request a loan modification, which is a request for "a foreclosure prevention alternative." (*See* FAC ¶ 10.)  Thereafter, Wells Fargo assigned a SPOC. (FAC ¶ 11.) Plaintiff then sets forth the specific facts in support her allegation that the SPOC failed to communicate and otherwise violated § 2923.7. (*See* FAC ¶¶ 49-51.)

Accordingly, Plaintiff has sufficiently pleaded a violation of § 2923.7 and Defendant's motion to dismiss this cause of action is denied.

5.   California Civil Code § 2924.10

Plaintiff's fifth cause of action is titled "Violation of California Civil Code § 2924.10." Section 2924.10(a) provides: "[w]hen a borrower submits a complete first lien modification application or any document in connection with a first lien modification application, the mortgage servicer shall provide written acknowledgment of the receipt of the documentation within five business days of receipt."  In its initial acknowledgement of receipt of the loan modification application, the mortgage servicer has to include information such as an estimate of when a decision on the loan modification will be made, any expiration dates for submitted documents, and any deficiency in the application.  *Id.*

Plaintiff alleges that Defendant violated California Civil Code § 2924.10 by failing to provide acknowledgment of receipt of Plaintiff's loan modification application within five days of receipt or at any point after she submitted the application, an estimate of when a decision on the loan modification would be made, any expiration dates for submitted documents, and any deficiency in the application.  (FAC ¶ 58.)

Defendant argues that Plaintiff's cause of action is factually deficient on the grounds that Plaintiff fails to state when the application was purportedly submitted, by what means, when Wells Fargo would have received the application.  (Def.'s Mot. at 18.)

The first amended complaint alleges that, in or around April 2013, Enrico sent in "the loan modification application along with the required documents to Defendant," and never

United States District Court
Northern District of California

1   received acknowledgement that Wells Fargo received the application.  (FAC ¶ 58.)  Section

2   2924.10(a) requires Defendant to acknowledge receipt of "a complete first lien modification

3   application or any document in connection with a first lien modification application," and to then

4   provide Plaintiff with information as to any deficiency in the application, and to process the

5   application to determine whether or not Plaintiff qualified for the loan modification. Cal. Civ.

6   Code § 2924.10(a).

7        Accordingly, Plaintiff pleads sufficiently facts that a first lien loan modification

8   application was submitted in April 2013 and that she never received an acknowledgement of

9   receipt in violation of § 2924.10, so the Court denies Defendant's motion to dismiss as to

10  Plaintiff's fifth cause of action.

11       6.   <u>Negligence</u>

12       Plaintiff's sixth cause of action is for negligence.  Under California law, to prove

13  negligence a plaintiff must plead and prove: (1) defendant's legal duty of care toward plaintiff,

14  (2) defendant's breach of that duty, (3) damage or injury to plaintiff, and (4) a causal relationship

15  between defendant's negligence and plaintiff's damages.  *Palm v. United States*, 835 F. Supp.

16  512, 520 (N.D. Cal 1993).  Generally, lenders do not owe borrowers a duty of care unless their

17  involvement in the loan transaction exceeds the scope of their "conventional role as a mere

18  lender of money."  *Nymark v. Heart Fed. Savings & Loan Ass'n,* 231 Cal. App. 3d 1089, 1095–

19  96 (1991); *see also Rijhwani v. Wells Fargo Home Mortgage, Inc.*, C 13-05881 LB, 2014 WL

20  890016, at *14 (N.D. Cal. Mar. 3, 2014).

21       Plaintiff alleges that as the beneficiary and servicer of her loan, Defendant had a duty to

22  use reasonable care in handling her loan and providing accurate reinstatement figures. (FAC ¶

23  63.)  When Enrico called Wells Fargo in April 2013 to make a payment, the representative

24  refused to take the payment stating that Plaintiff had to pay the full amount owed (about $3,000).

25  (*Id.* ¶ 64.)  One month later, the NOD stated that $9441.65 was due. *Id.* Essentially, Plaintiff

26  argues that Defendant breached its duty by providing inaccurate reinstatement amounts, thereby

27  interfering with Plaintiff's right to reinstate.

28

United States District Court
Northern District of California

Defendant responds by asserting that at no point does Plaintiff allege that she "requested a reinstatement quote, desired to reinstate her loan, was deterred from reinstating her loan, or ever had an intent to reinstate her loan." (Def.'s Mot. at 20.) Defendant further asserts that "liability to a borrower for negligence arises only when the lender 'actively participates' in the financed enterprise 'beyond the domain of the usual money lender.'" *Nymark*, 231 Cal.App.3d 1089, 1095 (quoting *Wagner v. Benson*, 101 Cal. App. 3d 27, 35 (1980).

Here, Plaintiff did not seek to reinstate the loan, nor plead that she had the ability to reinstate the loan. Instead, she was requesting a loan modification. Federal district courts in California are divided on when lenders owe a duty of care to borrowers in the context of the submission of loan modification applications and negotiations related to loan modifications. *See Rijhwani,* 2014 WL 890016, at *15-16. Based on the facts currently alleged in the first amended complaint, Wells Fargo did not owe a general duty to Plaintiff in servicing her loan or providing information regarding reinstatement.

Once Wells Fargo, however, provided Plaintiff with a loan modification application and asked Plaintiff to submit supporting documentation, and she did so, "Defendant undertook the activity of processing Plaintiff's loan modification request. Having undertaken that task, it owed Plaintiff a duty to exercise ordinary care in carrying out the task." *Garcia v. Ocwen Loan Servicing, LLC*, C 10-0290 PVT, 2010 WL 1881098, at *4 (N.D. Cal. May 10, 2010); *see also Rijhwani,* 2014 WL 890016, at *16. In order to determine "whether a financial institution owes a duty of care to a borrower-client," courts must balance the following non-exhaustive factors:

> [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm.

*Nymark,* 231 Cal. App. 3d at 1098 (quotation marks and citations omitted).

In the processing of a loan modification application, the transaction is unquestionably intended to affect Plaintiff, as the decision would determine whether or not she could keep her home. Second, the potential harm from mishandling the application is readily foreseeable as it is the loss of an opportunity to keep her home. Third, the injury to Plaintiff is certain, as Plaintiff

24

United States District Court
Northern District of California

1    lost her opportunity to potentially modify her loan and her home was sold.  Fourth, there is a

2    close connection between Wells Fargo's conduct of allegedly not processing the application and

3    the sale of Plaintiff's home.  Fifth, whether or not moral blame attaches to Wells Fargo's

4    conduct is unclear at this state of the litigation, but the uncertainty is insufficient to find that

5    there was no duty of care. *See Garcia,* 2010 WL 1881098, at *3.  Sixth, California's enactment

6    of HBOR and the federal government's home owner assistance programs, such as HAMP, shows

7    the existence of the public policy of preventing future harm to borrowers caught in the

8    foreclosure crisis.

9         In light of the above, Wells Fargo did not owe Plaintiff a duty of care in terms of

10   providing accurate information regarding reinstatement, so the negligence claim is dismissed.

11   Plaintiff is, however, granted leave to amend the sixth cause of action to allege negligence under

12   the theory that Wells Fargo owed a duty to exercise ordinary care in processing Plaintiff's loan

13   modification application.

14                              7.    Unfair Competition Law

15        Plaintiff's final cause of action is titled "Unfair Competition – Violation of Business and

16   Professions Code § 17200 *et seq*."  Section 17200 concerns unfair competition and prohibited

17   activities and states that "unfair competition shall mean and include any unlawful, unfair or

18   fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  Each prong of the UCL is

19   a separate and distinct theory of liability.  *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718,

20   731 (9th Cir. 2007).  In order to state a claim for UCL, Plaintiff must identify an underlying

21   statute that Defendant violated.  *Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th

22   1050, 1060, 28 Cal. Rptr. 3d 933, 938 (2005) (no § 17200 liability "for committing 'unlawful

23   business practices' without having violated another law").  A business practice is "unlawful," in

24   violation of the California Unfair Competition Law (UCL), if it violates another state or federal

25   law; the UCL "borrows" violations of other laws and treats them as independently actionable.

26   *Perea v. Walgreen Co.*, 939 F. Supp. 2d 1026, 1040 (C.D. Cal. 2013).

27   ///

28   ///

United States District Court
Northern District of California

1    Plaintiff alleges that Defendant's violations of California Civil Code §§ 2924, 2924.17,

2  2923.6, 2923.7, 2924.10, and negligence constitutes unlawful conduct under California Business

3  and Professions Code § 17200 *et seq.* (FAC ¶¶ 67-73.)

4    Defendant alleges that the UCL claim should be dismissed because Plaintiff relies on

5  defective statutory and common law claims in the complaint to support the UCL claim.  (Def.'s

6  Mot. at 22.)  The Court does agree that Plaintiff's negligence claim is not a basis for the UCL

7  claim, but that, in the absence of HOLA preemption, Plaintiff has provided sufficient facts to

8  show that Wells Fargo's actions were unlawful under HBOR.  Thus, even in the event that

9  Plaintiff is unable to amend to sufficiently allege a cause of action under § 2924, Plaintiff has a

10  sufficient statutory basis to bring a UCL claim.

11    Accordingly, Defendant's motion to dismiss the UCL cause of action is denied.

12                            **IV.    CONCLUSION**

13    In light of the above, Defendant Wells Fargo's request for judicial notice is

14  GRANTED.

15    The Court further GRANTS IN PART AND DENIES IN PART Defendant's

16  motion to dismiss.  Plaintiff's first, third, and sixth causes of action are dismissed with

17  leave to amend consistent with this order.  All other causes of action survive.  Plaintiff shall

18  file her second amended complaint within 14 days of this order.

19    IT IS SO ORDERED.

20  Dated: June 11, 2014

21  KANDIS A. WESTMORE
    United States Magistrate Judge

22

23

24

25

26

27

28

26